[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 10178
Defendant, Nicholas Russo is charged with multiple counts of fraudulently obtaining controlled substances in violation of C.G.S. § 21a-266 (a)(l) and forgery in the second degree, C.G.S. §53a-139.
Defendant seeks to suppress his prescription records obtained from pharmacies by an Inspector with the Federal Drug Enforcement Agency (DEA), without a search warrant, administrative warrant or subpoena at the request of the Hartford Police Department, by whom the defendant was employed as a detective.
At the suppression hearing, this court limited argument to the preliminary issue whether or not the defendant had the necessary expectation of privacy under either the United States or Connecticut Constitution to seek suppression of these documents and this Memorandum of Decision addresses only that issue.
To resolve this preliminary issue, the Court finds that on October 9, 1997, the defendant, Detective Nicholas Russo, Jr., became the subject of a criminal investigation conducted by the Hartford Police Department (HPD). At the request of HPD Captain Jeffrey Flaherty, DEA Inspector Marcus Brown began an investigation of pharmacies located within Det. Russo's neighborhood. During this investigation, Inspector Brown requested each pharmacy turn over patient profiles held on Det. Russo, which consisted of his record of prescriptions. The parties have stipulated that Inspector Brown did not have a search warrant, administrative warrant or subpoena, but rather, without legal process, obtained these records.
Defendant moves to suppress the prescription information obtained from each pharmacy by Inspector Brown. Defendant challenges the admissibility of the evidence, claiming the records were obtained as the result of a warrantless criminal investigation, in violation of the Constitution of the United States, amendment four, and Constitution of Connecticut, article first, § 7. CT Page 10179
The state contends that the defendant lacks the requisite standing to challenge the admissibility of these prescription records, since the records were not seized from him, but were obtained from third parties, namely the pharmacies. The state claims that the defendant does not possess a reasonable expectation of privacy in these records obtained from third parties.
Federal and state law both recognize and acknowledge adherence to the policy that the fourth amendment protects persons, not places, and is a right that cannot be raised vicariously, but must be pursued personally. See Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373
(1998); see also United States v. Salvucci, 448 U.S. 83, 87,100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421, L.Ed. 387 (1978), reh'g denied 439 U.S. 1122, 99 S.Ct. 1035,59 L.Ed.2d 83 (1979); Katz v. United States, 389 U.S. 347, 351, 353,88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Brosnan, 24 Conn. App. 473,478, 589 A.2d 1234 (1991), rev'd in part, affd in part 21 Conn. 788,608 A.2d 49 (1992). The person challenging the illegal search and seizure bears the burden of proving that he or she possessed a "reasonable expectation of privacy" in the thing or place searched. State v.Pittman, 209 Conn. 596, 601, 553 A.2d 155 (1989); see State v. Bernier,246 Conn. 63, 76 717 A.2d 652 (1998) (holding that "[t]he defendant bears the burden of proving that his privacy interests in the place searched are reasonable."); see generally Minnesota v. Carter, supra 525 U.S. 88 (discussing a defendant's ability to prove a Fourth Amendment violation); see also Rawlings v. Kentucky, 448 U.S. 98, 104,100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
Under both the fourth amendment to the United States Constitution and article first, § 7 of the constitution of Connecticut, a search conducted without a warrant is per se unreasonable. See Steagald v.United States, 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); see also Katz v. United States, supra 389 U.S. 357; State v. Joyce,229 Conn. 10, 24-25, 639 A.2d 1007 (1994), cert. denied 523 U.S. 1077,118 S.Ct. 1523, 140 L.Ed.2d 674 (1994). A defendant will not be permitted to challenge the unreasonableness of the warrantless search and seizure absent a showing that that particular defendant possessed: (1) a legitimate expectation of privacy; and (2) that expectation is deemed reasonable by society. See Minnesota v. Carter, supra, 525 U.S. 88; see also State v. Bernier, supra, 246 Conn. 72; State v. Hill, 237 Conn. 81,92, 675 A.2d 866 (1996); State v. Joyce, supra, 229 Conn. 20.
In 1978, the Supreme Court of the United States abolished the notion of "automatic standing" as it related to federal fourth amendment search and seizure challenges. See Rakas v. Illinois, supra, 439 U.S. 138. Since CT Page 10180 that holding, the Court has repeatedly reaffirmed its decision and expressly held that a search and seizure challenge is best reviewed "within the purview of substantive fourth amendment law than within that of standing." Rakas v. Illinois, supra, 439 U.S. 140. Previously, "standing" to challenge a Fourth Amendment violation could be conferred upon an individual merely because he or she was the "target" of a search. See id. 136 (discussing target theory as allowing "those against whom the search was directed" to raise a Fourth Amendment challenge, regardless of the privacy interest the target possessed in the place searched).
The Court has consistently upheld its rejection of standing in favor of review under a substantive fourth amendment claim. See United States v.Salvucci, supra, 448 U.S. 87; see also Minnesota v. Carter, supra, 525 U.S. 88. Rather than analyzing a fourth amendment challenge under the traditional standing doctrine, which requires a party to allege an injury-infact and assert his or her own rights, the Court asks: "whether the challenged search and seizure violated the Fourth Amendment rights of the criminal defendant who seeks to exclude the evidence obtained during it." Rakas v. Illinois, supra, 439 U.S. 139-40.
The Supreme Court of Connecticut recognized that automatic standing no longer exists in the context of a federal constitutional challenge. SeeState v. Maia, 243 Conn. 242, 703 A.2d 98 (1997). However, the court has yet to answer the question of whether automatic standing exists when a criminal defendant raises a search and seizure challenge under article first, § 7 of the constitution of Connecticut. See id. (noting that the question of automatic standing remains open in Connecticut).
The Supreme Court of Connecticut did find that "[t]he touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place." State v. Hill, supra, 237 Conn. 92. The court proceeded to enumerate a two-part "subjective/objective" test that "must be satisfied" for a criminal defendant to prove that he or she possessed a "reasonable expectation of privacy." Id. Under the two-part test a criminal defendant must prove that: (1) he or she manifested a subjective expectation of privacy" with the place or thing searched; and (2) the expectation is one that "society would consider reasonable." Id. 72.
In State v. Mitchell, 56 Conn. App. 561, 565-66, 744 A.2d 927 (2000), cert. denied, 253 Conn. 910, ___ A.2d ___ (2000), the Appellate Court of Connecticut interpreted the two-prong test set forth in Hill to be the test for determining standing under article first, § 7 of the constitution of Connecticut. The Mitchell court further found that this two-part test is "the same test as that under the United States constitution." State v. Mitchell, supra, 56 Conn. App. 566, citing CT Page 10181Minnesota v. Olson, 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85
(1990) (holding that since Katz, the law requires (1) a legitimate expectation of privacy that (2) "society is prepared to recognize as reasonable.) (Internal quotation marks omitted.)
The Appellate Court of Connecticut recently analyzed the Hill two-part subjective/objective test in State v. Boyd, 57 Conn. App. 176, 184,749 A.2d 637 (2000), cert. denied, 253 Conn. 912 ___ A.2d ___ (2000). The court held that the "subjective test does not rest on the absolute subjective perception of the individual defendant. . . . but on finding conduct that has demonstrated an intention to keep activities or things private and free from knowing exposure. . . ." Id., 185. The court reiterated that to establish this subjective perception, the individual must have: (1) a personal relationship with the searched location; (2) a regular relationship with the searched location; and (3) "maintained the location and the items within it in a private manner at the time of the search." Id.
The Appellate Court also elaborated on the factors that may be taken into consideration in making the determination as to whether the individual's privacy interest is objectively reasonable within society. Id., 188. The court stressed that the enumerated factors included, but were not limited to, such things as: ownership of the property; "use of the premises on a regular basis for professional, religious, or business purposes"; measures the individual employed to secure or insure privacy; and the individual's "subjective expectation that the premises would remain free from Government intrusion[.]" State v. Boyd, supra,57 Conn. App. 188.
The relevant question here is whether Detective Russo possessed a legitimate expectation of privacy in prescription records maintained by the pharmacies he patronized. If this question is answered in the affirmative, the next question necessarily must be whether this expectation of privacy is an objectively reasonable expectation within society. An expectation of privacy is legitimate when it is "rooted in a generally accepted understanding that is recognized and permitted by society." State v. Brosnan, supra, 24 Conn. App. 479.
The review and determination of what constitutes an objectively reasonable expectation of privacy is performed on a "case-by-case" basis in Connecticut. State v. Bernier, supra, 246 Conn. 72. This determination requires a "fact-specific inquiry into all the relevant circumstances." Id.; see State v. Pittman, supra, 209 Conn. 600, positing that a determination of a reasonable expectation of privacy requires a full inquiry into the relevant facts). The fact specific inquiry investigates whether: (1) the official conduct constituted a search under the federal CT Page 10182 and state constitutions; and (2) it "infringe[d] an expectation of privacy that society is prepared to consider reasonable." State v. Joyce, supra, 229 Conn. 23-24.
"[A] person can have a legally sufficient interest in a place other than his own home so that the fourth amendment protects him from unreasonable governmental intrusions into that place." Rakas v.Illinois, supra, 439 U.S. 142. Criminal defendants have been permitted to raise a Fourth Amendment challenge to searches and seizures conducted against a third party when they have been able to "demonstrate . . . a legitimate expectation of privacy attaching to the records obtained."United States v. Plunk, 153 F.3d 1011, 1020 (9th Cir. 1998); cert. denied, 526 U.S. 1060, 119 S.Ct. 1376, 143 L.Ed.2d 535 (1999).
Courts have found that no reasonable expectation of privacy attaches to such things as telephone and bank records. See id.; see also Smith v.Maryland, 442 U.S. 735, 743, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding no subjective expectation of privacy attaches to phone numbers because numbers are voluntarily conveyed); State v. lasevoli,188 Conn. 325, 334, 449 A.2d 996 (1982) (holding that fourth amendment does not prohibit obtaining an individual's bank records from the third party bank); see generally In re Petition of State's Attorney. Cook County. IL, 179 Conn. 102, 106, 425 A.2d 588 (1979) (holding that bank customer retains no right to contest subpoena issued to the bank for the customer's record).
While it is true that courts have often held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," exceptions do exist. Smith v. Maryland, supra 442 U.S. 743. An expectation of privacy has been held to attach to records regarding an individual's health, regardless of whether those records are maintained by and obtained from a third party. See generallyDoe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994) (holding that information regarding an individual's health is protected under an individual's right to privacy). The right to privacy regarding the status of an individual's health stems from the fact that "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over." Doe v. City of New York, supra 15 F.3d 267; see also Powell v.Schriver, 175 F.3d 107, 111 (2d Cir. 1999).
Whether an individual maintains a privacy interest in his or her personal prescription records is a question that several courts have considered. The Supreme Court of the United States held that a privacy interest attaches to prescription records through an individual's "interest in avoiding disclosure of personal matters." Whalen v. Roe, CT Page 10183429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The Ninth Circuit Court of Appeals recently reiterated this holding in its finding that the subject of seized prescription records possesses the requisite standing to raise a fourth amendment challenge to the seizure of prescription records from a third party in the course of a criminal investigation. SeeMurphy v. Townsend, 187 F.3d 648, 1999 WL 439468 1-2 (9th Cir. 1999).
In State v. DeFusco, 224 Conn. 627 (1993), our Supreme Court noted in a footnote: "We are sensitive to the reality that, in our complex society, some Connecticut residents may legally generate garbage that reveals highiy personal information. Medical information or products, financial documents and personal letters are among those items that we think it reasonable for Connecticut residents to wish to maintain as confidential. . . ." fn. 19.
Though the prescription records were seized from the pharmacies and not the defendant personally, the Court finds he may assert a violation of his federal and state constitutional rights. Prescriptions are issued by doctors and generally pertain to and provide insight into an individual's health, be it psychological or physical. Connecticut General Statutes § 38a-976 specifically classifies information obtained from pharmacists or pharmacies as medical records under the Connecticut Insurance Record and Privacy Protection Act. General Statutes § 38a-976
(r). As such, prescription records fall within the purview of the right of confidentiality, and thus, the right of privacy, for all individuals.
Because information that may be obtained from a pharmacy or a pharmacist is classified as medical records, the defendant has a legitimate expectation that his prescription records will remain confidential. There is a legitimate expectation of privacy when an individual brings a prescription to a pharmacy to be filled because that prescription pertains to that person's physical and mental health. The defendant meets the subjective expectation standards set forth in Statev. Boyd, supra, 57 Conn. App. 185. Further, as a detective who often worked in conjunction with federal agents, Detective Russo, more than an ordinary citizen, would have maintained a belief that his prescription records would remain private pursuant to the Connecticut General Statutes and the mandates of 21 U.S.C. § 880, authorizing administrative searches only.
This is an expectation that is objectively reasonable as prescriptions pertain to health, and an individual's health is a matter over "which one would prefer to maintain greater control." Doe v. City of New York, supra, 15 F.3d 267. Again, the non-exhaustive Boyd factors are met here. See State v. Boyd, supra, 57 Conn. App. 188. Detective Russo would have possessed a "subjective expectation that the [pharmacies] would remain CT Page 10184 free from government intrusion" because of the protections afforded all citizens by the Connecticut General Statutes and the United States Code, as they relate to privacy and to obtaining medical records.
For the above reasons, the defendant is found to possess the requisite expectation of privacy (standing) necessary to assert a challenge to the admissibility of his prescription records, regardless of the fact that the records were obtained from a third party.
In view of this preliminary ruling, further proceedings will be necessary prior to a substantive decision on the defendant's motion to suppress.
Schimelman, J.